UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CORY FESSLER, et al.          ]
                              ]
v.                            ]          No. 1-00-0120
                              ]          Judge Higgins
GILES COUNTY BOARD OF         ]
EDUCATION, et al.             ]

M E M O R A N D U M

The Court has before it the motion (filed April 11, 2001;
Docket Entry No. 58) for summary judgment by the defendants, Giles
County Board of Education and Sam T. Collins, and their memorandum
(filed April 11, 2001; Docket Entry No. 59) in support; the
plaintiffs' response (filed May 3, 2001; Docket Entry No. 78) and
their memorandum (filed May 3, 2001; Docket Entry No. 79) in
support; the motion (filed April 11, 2001; Docket Entry No. 64) by
the defendant, Dan Nugent, for summary judgment and his memorandum
(filed April 11, 2001; Docket Entry No. 65) in support; and the
plaintiffs' response (filed May 3, 2001; Docket Entry No. 82) and
their memorandum (filed May 3, 2001; Docket Entry No. 83) in
support.

The Court has subject matter jurisdiction over the plaintiffs'
claims under Title 42, United States Code, Section 1983, pursuant
to 28 U.S.C. §§ 1331 and 1343.

For the reasons set forth below, the Court shall grant the
defendants' motions.

I.

The plaintiffs, Cory Fessler and his mother Janet Fessler, are residents of Tennessee, and at the time of the incident in their complaint, Cory, who is autistic, was a student attending the school system of Giles County, Tennessee. They originally filed this action on September 26, 2000, against the defendants, Giles County Board of Education, Giles County School System, Sam T. Collins, Earl Wakefield and Dan Nugent. The Court subsequently dismissed Giles County School System and Earl Wakefield as defendants, leaving as defendants, Giles County Board of Education and Sam T. Collins and Dan Nugent in their individual capacities. See order (entered January 8, 2001; Docket Entry No. 19). The Court also dismissed the plaintiffs' state law claims without prejudice, and their claim based upon the Fifth Amendment to the United States Constitution was dismissed as well. See order (entered December 21, 2000; Docket Entry No. 15).

The plaintiffs allege that the defendants violated Cory's constitutional rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Specifically, they allege that Mr. Nugent, who was an educational assistant and employee of the Giles County Board of Education, committed an assault and battery on Cory, constituting cruel and unusual punishment in violation of Cory's due process rights under the Fourteenth Amendment. They also allege that the Giles County Board of Education and Mr. Collins,

2

the Superintendent/Director of the Giles County School System, failed to provide appropriate training and supervision of Mr. Nugent in the handling of autistic children with special needs, which led to the employment of inappropriate behavior management techniques by Mr. Nugent. This alleged failure to train and supervise by Mr. Collins and the Giles County Board of Education purportedly created an atmosphere among the school system's employees that abusive conduct towards students would be condoned by their superiors. The plaintiff, Ms. Fessler, also alleged a separate cause of action pursuant to § 1983 that as a result of the alleged treatment to her son she experienced great mental pain and anguish and loss of companionship.

On January 18, 2002, the Court entered an order (Docket Entry No. 109) granting the defendants' motion (filed March 15, 2000; Docket Entry No. 33) to dismiss for failure to exhaust administrative remedies pursuant to the Individuals with Disabilities Education Act, and the plaintiffs' federal law claims were dismissed without prejudice. Ms. Fessler's derivative claim was dismissed with prejudice. The plaintiffs timely filed a notice (Docket Entry No. 110) of appeal on February 14, 2002. While that case was pending on appeal, the plaintiffs pursued their administrative remedies under the IDEA. On June 12, 2002, the administrative law judge conducting the due process hearing dismissed the plaintiffs' claims. See information copy (filed May

3

12, 2003; Docket Entry No. 135) from the United States Court of Appeals for the Sixth Circuit. On May 8, 2003, the Sixth Circuit entered an order (Docket Entry No. 135) dismissing the appeal as moot as the plaintiffs had exhausted their administrative remedies, and the mandate (Docket Entry No. 136) issued on June 2, 2003. The plaintiffs' claims are now once again before this Court.

II.

At the time of the alleged incident, Cory Fessler was eight years old. He weighed in excess of one hundred pounds and was bigger than most boys his age. His autism greatly affects his ability to control his impulses and reactions to outside stimuli. According to his mother, his autism not only impairs his ability to understand what other people are asking of him, but it significantly impairs his ability to understand the impact and consequences of his actions such as spitting, kicking and hitting.

On or about March 22, 2000, Cory was attending Pulaski Elementary in Giles County, Tennessee, when he and Mr. Nugent became involved in an altercation while in the school classroom. Mr. Nugent had been originally assigned as a teacher's aide for an autistic child in another classroom during the 1999/2000 school year. Mr. Nugent received no complaints concerning his work with this child. In January, 2000, Mr. Nugent was transferred to Cory's classroom to assist special education teacher, Freda Olive, with Cory and another autistic child.

4

On the day in question, Cory was instructed by Tonya Holley, one of the other teacher's aides, to turn off the computer on which he was playing and to go outside with the rest of his classmates. When Cory refused, Mr. Nugent turned off Cory's computer. There is a dispute as to what transpired next. According to Ms. Holley, when Mr. Nugent turned off the computer Cory kicked Mr. Nugent in the leg. Notice (filed April 11, 2001; Docket Entry No. 67) of filing, attachment thereto, deposition of Tonya Holley at 47. In response Mr. Nugent kicked Cory on his shin and then slung him to the ground. During this scuffle, Mr. Nugent allegedly twisted Cory's lip and stated, "If you bite me-I'll knock your teeth out." Ms. Holley then separated the two, and Cory ran outside crying. Mr. Nugent then asked Ms. Holley what he had done wrong, and Ms. Holley responded that using force would not solve such issues. Id. at 48.[1] She testified that she did not know whether Mr. Nugent's kick was a hard or soft kick, but just that he kicked him. Id. at 50.

---

[1]This account is somewhat different from what Ms. Holley wrote in a memorandum dated March 22, 2000. Id. at 74, exhibit 1. There she stated that after Mr. Nugent tried to turn off the computer Cory hit him. In response Mr. Nugent grabbed Cory by the arm and slung him to the ground. Cory then ran and hit Mr. Nugent again. Mr. Nugent grabbed Cory's arm. Cory then grabbed Mr. Nugent's arm and bit him. Mr. Nugent grabbed Cory's face and said that he would knock his teeth out if he bit him. Ms. Holley then got Cory calm, put him back on the computer and set the timer. Ms. Holley then left the room. According to Ms. Holley, when she returned Ms. Hollis, who was substituting for Ms. Olive that day, informed her that she witnessed Mr. Nugent and Cory exchange kicks with each other. Id.

5

However, Mr. Nugent testified that when he turned off the computer Cory grabbed his arm and tried to bite him. Notice (filed April 11, 2001; Docket Entry No. 63) of filing, attachment thereto, deposition of Dan Nugent at 28. Mr. Nugent stated that he jerked his arm back, which caused Cory to tumble to the floor. Id. at 29. Cory immediately got up from the floor and kicked Mr. Nugent. Id. at 35. Mr. Nugent responded by saying, "Cory, no kick, outside." Cory then kicked Mr. Nugent a second time. Mr. Nugent instructed Cory to go outside again, and Cory attempted to kick Mr. Nugent a third time. Mr. Nugent blocked Cory's third kick with his foot, and when Cory indicated that he was about to kick him again, Mr. Nugent testified that he lightly kicked Cory on his left shin. He explained that he was trying to show Cory that kicking was not appropriate behavior and that he should respect other people. Id. at 55. He stated that Cory did not cry or grab his leg. Cory then went outside and played. Id. at 35. He disputed that he twisted Cory's lip but did not deny that he may have said that he would "knock [his] teeth out." Id. at 27. No medical attention or first aid was sought for Cory as a result of the incident with Mr. Nugent. However, Ms. Fessler, who is a registered nurse, testified that she examined Cory and found deep bruises on his legs. Plaintiffs' response (filed May 3, 2001; Docket Entry No. 85) to defendant's statement of material facts, ¶ 22.

6

Mr. Collins learned of this incident on April 4, 2000. He interviewed Mr. Nugent, Ms. Holley and Ms. Olive the next day. That day, following his investigation, he had Mr. Nugent reassigned to a class at Giles County High School. Affidavit (filed April 11, 2001; Docket Entry No. 60) of Sam T. Collins, ¶¶ 4-8.

Ms. Fessler filed a due process hearing request with the Tennessee Department of Education Division of Special Education on April 4, 2000. Plaintiffs' response (filed April 11, 2001; Docket Entry No. 71) to defendants' statement of material facts, ¶ 1. In her request, Ms. Fessler complained that the Giles County Board of Education failed to provide Cory with a free appropriate education. She also complained of physical abuse, inappropriate training and inappropriate behavior. Id., ¶ 2. On May 26, 2000, the Giles County Board of Education and Ms. Fessler met in mediation. Defendants' notice (filed March 15, 2001; Docket Entry No. 36) of filing, attachment thereto, exhibit 4 to deposition of Janet Fessler. The agreement reached provided that Cory was to be reevaluated for autism and if he was identified as suffering from autism then both parties would visit proposed residential facilities to find a suitable alternative to Cory's school in Giles County. Id. As a result of the mediated agreement, Cory was eventually enrolled in Judevine, a residential school for autistic children in St. Louis, Missouri, where according to his mother he

7

had "blossomed" and was doing "wonderful" and "awesome."  Id.,
deposition of Janet Fessler at 165, 173.

The plaintiffs contend that the punishment administered by Mr.
Nugent was grossly disproportionate to Cory's actions and that it
constituted cruel and unusual punishment in violation of Cory's
rights under the Fourteenth Amendment. The plaintiffs contend that
because of the abusive treatment by Mr. Nugent, Cory's behavior
difficulties increased at school and at home. As a result, Cory
was enrolled in Judevine.

Mr. Nugent asserts that he was never told by school
authorities that he could not use physical means of redirecting
Cory or that corporal punishment was an inappropriate means of
discipline for Cory. Affidavit (filed April 11, 2001; Docket Entry
No. 68), ¶ 4.  Nor was there any provision in Cory's Individual
Education Program plan prohibiting the use of physical means in
redirecting Cory or the use of corporal punishment. Id., ¶ 3. He
asserts that Ms. Fessler did not tell him to avoid using physical
controls or not to use corporal punishment on Cory. Id., ¶ 4. Mr.
Nugent also asserts that he was aware prior to March 22, 2000, that
Ms. Fessler and Stoney Curry (the man whom Ms. Fessler has lived
with since 1995 or 1996) had previously used corporal punishment on
Cory. Id., ¶ 9.  Further, he asserts that Ms. Fessler never told
him that she was concerned or upset about his demeanor or use of
discipline on Cory. Id., ¶ 6.

8

The plaintiffs dispute these assertions. Ms. Fessler testified that although she did not directly tell Mr. Nugent that he was not to use physical means in disciplining Cory she specifically told Ms. Olive and Rose Brown, the Director of Special Education for the Giles County School System, that Mr. Nugent was not to hit her son. Defendants' notice (Docket Entry No. 36) of filing, attachment thereto, deposition of Janet Fessler at 113-14, 127. While neither Ms. Olive nor Ms. Brown could recall Ms. Fessler voicing any concerns about Mr. Nugent, Ms. Olive testified that she did tell Mr. Nugent that autistic children generally react negatively to physical force. Notice (Docket Entry No. 63) of filing, attachment thereto, deposition of Freda Olive at 53; deposition (filed April 24, 2001; Docket Entry No. 77) of Rose Brown at 22. Dawn Archer, the teacher whom Ms. Olive replaced in February 2000, testified that she informed Mr. Nugent that Ms. Fessler indicated that she did not want Cory to be physically managed by being hit or slapped. Deposition (filed May 3, 2001; Docket Entry No. 92) of Dawn Archer at 64-65. Ms. Holley also testified that prior to the March 22, 2000, incident she told Mr. Nugent that using force would not work. Notice (Docket Entry No. 67) of filing, attachment thereto, deposition of Tonya Holley at 116. The plaintiffs also dispute Mr. Nugent's assertion that Cory's IEP did not contain any prohibitions on using physical means in redirecting Cory or using corporal punishment. The plaintiffs

9

argue that by that logic, Cory's teachers would have been able to use shock therapy since it was not specifically prohibited in his IEP. Defendants' notice (Docket Entry No. 36) of filing, attachment thereto, deposition of Janet Fessler at 120.

The defendant, Mr. Nugent, moves for summary judgment on the grounds that (1) the plaintiffs have failed to allege a violation of their substantive due process rights; (2) Mr. Nugent is entitled to qualified immunity; (3) the plaintiffs' claims have been waived or are moot; and (4) there are adequate state law post deprivation remedies. He also asserts that the alleged facts do not support a claim for punitive damages.

The plaintiffs also assert that Mr. Collins and the Giles County Board of Education failed to train properly and supervise Mr. Nugent and other employees of the school system in assisting both regular children and children with special needs. They further contend that Mr. Collins and the Giles County Board of Education were aware of these deficiencies but were indifferent in remedying them, thereby creating a policy that abusive conduct by the school system's employees towards its students would be tolerated.

The defendants contend that Mr. Collins was not directly responsible for the training or on-site supervision of Mr. Nugent. Plaintiffs' response (filed May 3, 2001; Docket Entry No. 81) to statements of material facts, ¶ 1. As superintendent he relies

10

upon his program supervisors to make decisions relative to their area of responsibility. Defendants' notice (Docket Entry No. 36) of filing, attachment thereto, deposition of Sam T. Collins at 25. In this instance, Ms. Brown was the director in charge of the special education department. The defendants assert that the State of Tennessee Department of Education issues certificates to special education teachers and is responsible for the monitoring of special education programs. Affidavit (Docket Entry No. 60) of Sam T. Collins, ¶ 2. They also assert that Mr. Collins had no knowledge from any source of any problems between Cory and Mr. Nugent prior to the incident on March 22, 2000. Plaintiffs' response (Docket Entry No. 81) to statements of material facts, ¶¶ 2-3. Further, they assert that it is the School Board's policy that every student is afforded a safe environment in which to learn and every student is treated with respect and free from abuse. Id., ¶¶ 5-6.

The plaintiffs contend that as superintendent Mr. Collins had the responsibility to make sure that teachers in his school system were properly trained. They contend that the defendants were aware that Ms. Fessler had raised concerns about the inadequacy of the training of the teachers and their aides. Although the plaintiffs cannot refute that Mr. Collins was not aware of any specific problems between Cory and Mr. Nugent, they assert that Ms. Fessler repeatedly advised the defendants for the need for more and better

11

training regarding the handling of "behaviors"[2] of autistic children and had sent materials on the subject. They further assert that the defendants did not adhere to their written policy of providing a safe environment for their students. See id., ¶¶ 1-3, 5-8.

The defendants, Giles County Board of Education and Mr. Collins, move for summary judgment on the grounds that (1) Mr. Collins is entitled to qualified immunity; (2) the Giles County Board of Education should be dismissed because there is no vicarious liability pursuant to 42 U.S.C. § 1983 and the plaintiffs have failed to show that an officially executed policy or practice caused the deprivation of a constitutional right; (3) the supervisory officials did not participate in or encourage any misconduct; and (4) the plaintiffs have waived their right to bring this lawsuit after having voluntarily settled their claims. The defendants also assert that the punitive damages claims against Mr. Collins are unsupported by the evidence.

### III.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

---

[2]The use of "behaviors" in the plural seems to be a term of art in connection with the actions of autistic children.

12

issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1349 (6th Cir. 1991). In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); Davidson & Jones Dev. Co., 921 F.2d at 1349; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). An issue of material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In addition, a dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[3] Id. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211-12. Since the preponderance

---

[3]The Supreme Court of the United States further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

13

of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. Id. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." Davidson & Jones Dev. Co., 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6ᵗʰ Cir. 1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. Liberty Lobby, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

IV.

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. There are two essential elements to an

14

action under § 1983: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The plaintiffs assert that the defendants' conduct amounted to a violation of the Substantive Due Process Clause of the Fourteenth Amendment. In essence their claims are based on a violation of Cory's constitutionally protected interest in his personal bodily integrity.

## A. DAN NUGENT

Mr. Nugent contends that he is entitled to qualified immunity. Qualified immunity is an immunity from suit that extends to government officials performing discretionary functions. Blake v. Wright, 179 F.3d 1003, 1007 (6th Cir. 1999). Government officials acting in their official capacities are not liable for civil damages if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly

15

established' at the time it was taken."). "The statutory or constitutional rights in question must have been 'so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" Cullinan v. Abramson, 128 F.3d 301, 309 (6th Cir. 1997) (citations omitted); Kain v. Nesbitt, 156 F.3d 669, 671 (6th Cir. 1998) ("When making a qualified immunity analysis, it is important to remember that the defendant is, in essence, saying: 'If the plaintiff's version is credited, what I did, judged today, arguendo would be wrongful, but at the time I acted, no reasonable officer would have known he was acting wrongfully.'"). "This 'objective reasonableness' standard focuses on whether defendants reasonably could have thought that their actions were consistent with the rights that plaintiff claims have been violated." Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir. 1993).

In determining whether qualified immunity applies, courts are to apply a three-part inquiry. Courts must first decide whether there were alleged constitutional or statutory violations,[4] and

---

[4]     If no constitutional right would have been
violated were the allegations established,
there is no necessity for further inquiries
concerning qualified immunity. On the other
hand, if a violation could be made out on a
favorable view of the parties' submissions,
the next, sequential step is to ask whether
the right was clearly established.

16

second, must decide if such violations were "clearly established" at the time of the alleged violations of which a reasonable person would have known. <u>Williams v. Mehra</u>, 186 F.3d 685, 691 (6th Cir. 1999) (en banc); <u>Blake</u>, 179 F.3d at 1007. A right is "clearly established" if the question has been decided by the Supreme Court, the United States Court of Appeals for the circuit in which the district court deciding the issue sits, other courts within that circuit, the district court itself or case law from other circuits that is directly on point. <u>Id</u>.; <u>Dickerson v. McClellan</u>, 101 F.3d 1151, 1158 (6th Cir. 1996). However, "a single recent case from the Court of Appeals of another circuit is hardly sufficient to make the law 'clearly established' in [the Sixth Circuit]." <u>Eugene D. v. Karman</u>, 889 F.2d 701, 706 (6th Cir. 1989); <u>Cullinan</u>, 128 F.3d at 311 ("Ordinarily, at least, in determining whether a right is 'clearly established' this court will not look beyond Supreme Court and Sixth Circuit precedent."). Courts may also look to the highest state court in the state where the case arose. <u>Id</u>. at 706 n.6; <u>Caldwell v. Moore</u>, 968 F.2d 595, 599 (6th Cir. 1992). "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been

---

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001); <u>Kain</u>, 156 F.3d at 672 ("If an officer committed no wrong, then qualified immunity is not implicated.").

17

clearly foreshadowed by applicable direct authority.'" <u>Blake</u>, 179
F.3d at 1007 (internal quotations omitted). Further,

> [t]he contours of the right must be sufficiently clear
> that a reasonable official would understand that what he
> is doing violates that right. This is not to say that an
> official action is protected by qualified immunity unless
> the very action in question has previously been held
> unlawful; but it is to say that in the light of
> pre-existing law the unlawfulness must be apparent.

<u>Anderson</u>, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531.

Once a court finds that the right is clearly established, the
court must next decide the second part of the second prong,
"whether a reasonable person in the defendant's position would have
known that his or her actions violated clearly established rights."
<u>Blake</u>, 179 F.3d at 1008. The test is an objective standard, and
the defendant's subjective intent is irrelevant. <u>Id</u>.

Lastly, the court must "determine whether the plaintiff has
alleged sufficient facts, and supported the allegations by
sufficient evidence, to indicate that what the official allegedly
did was objectively unreasonable in light of the clearly
established constitutional rights." <u>Williams</u>, 186 F.3d at 691.

Thus, before the Court addresses whether a particular
constitutional right was clearly established, it must answer the

---

The Court notes that if the right is determined to be
"clearly established" and barring the pleading of extraordinary
circumstances, the defense of qualified immunity will usually fail
because "a reasonably competent public official should know the law
governing his conduct." <u>Id</u>. n.4 (quoting <u>Harlow</u>, 457 U.S. at 819,
102 S.Ct. at 2738, 73 L.Ed.2d at 411).

18

threshold question of whether a constitutional or statutory violation has occurred at all. Saylor v. Board of Educ. of Harlan County, 118 F.3d 507, 512 (6ʰ Cir. 1997). It is clear that individuals have a Fourteenth Amendment liberty interest in freedom from bodily injury. Ingraham v. Wright, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711, 731 (1977); Webb v. McCullough, 828 F.2d 1151, 1157 (6ᵗʰ Cir. 1987). The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261, 273 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986)). "[T]he substantive component of the Due Process Clause is violated by [state] action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043, 1058 (1998) (quoting Collins, supra, 503 U.S. at 128, 112 S.Ct. at 1070, 117 L.Ed.2d at 275). Therefore, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id., 523 U.S. at 849, 118 S.Ct. at 1718, 140 L.Ed.2d at

1059.[6]  In the context of corporal punishment or excessive force in public school settings, the "shocks the conscience" standard is applied.  Saylor, supra; Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 725 (6th Cir. 1996); Webb, supra.

The seminal case in addressing excessive force in public schools, as recognized by the United States Court of Appeals for the Sixth Circuit, is Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980).  See Saylor, 118 F.3d at 514; Archey v. Hyche, 935 F.2d 269, Nos. 90-5631, 90-5863, 1991 WL 100586, at *2 (6th Cir. June 11, 1991); Darden v. Watkins, 845 F.2d 325, No. 87-5331, 1988 WL 40083, at *3 (6th Cir. April 28, 1988); see also Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 173 (3d Cir. 2001) ("Hall now provides the most commonly cited test for claims of excessive force in public schools.").  In that case, the minor plaintiff was repeatedly paddled and was subsequently taken to the emergency room where she was admitted and kept for ten days for treatment for traumatic injury to her left hip, thigh and buttock.  She received

---

[6]The Supreme Court of the United States has yet to determine whether corporal punishment of a public school child may implicate substantive due process rights.  Ingraham, 430 U.S. at 679 n.47, 97 S.Ct. at 1416 n.47, 51 L.Ed.2d at 735 n.47 ("We have no occasion in this case . . . to decide whether or under what circumstances corporal punishment of a public school child may give rise to an independent federal cause of action to vindicate substantive rights under the Due Process Clause.").  However, the Sixth Circuit has made clear that such conduct may give rise to a substantive due process claim.  Webb, 828 F.2d at 1159; Archey v. Hyche, 935 F.2d 269, 1991 WL 100586, at *2 (6th Cir. June 11, 1991); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 725 (6th Cir. 1996).

20

treatment from specialists for possible permanent injuries to her lower back and spine. Id. at 614. In finding that a substantive due process claim existed, the United States Court of Appeals for the Fourth Circuit stated:

> In the context of disciplinary corporal punishment in the public schools, we emphasize once more that the substantive due process claim is quite different than a claim of assault and battery under state tort law. In resolving a state tort claim, decision may well turn on whether "ten licks rather than five" were excessive . . . so that line-drawing this refined may be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

Id. at 613 (citations omitted).

This rationale was adopted by the Sixth Circuit in Webb, 828 F.2d at 1158. In Webb a high school girl on a school trip locked herself in the bathroom after the principal informed her that he was going to send her home upon his discovery of a boy and alcohol in her room. Id. at 1153-54. The principal became angry when he realized the girl had locked herself in the bathroom. He attempted to jimmy the lock, but when that failed he slammed the door with his shoulder. The door gave way knocking the girl against the wall

21

and then onto the floor.  He grabbed her from the floor, threw her against the wall and slapped her.  Id. at 1154.

In determining that a substantive due process claim existed, the Sixth Circuit quoted the above passage from Hall, supra.  In reversing the district court's grant of the defendant's motion for summary judgment, the Court concluded:

> Because the alleged blows were not struck in the school context, where the need for immediate disciplinary control . . . is at its greatest, because [the principal] was *in loco parentis* to [the plaintiff], and because it is possible that the blows were not disciplinary in nature, a trier of fact could find that under the circumstances, [the principal's] need to strike [the plaintiff] was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of [the principal's] official power, literally shocking to the conscience.

828 F.2d at 1159.  The Court also noted that the record did not reveal any reason for the blows or that "the blows arose other than in anger or from malice."  Id. at 1158.

Thus, based on the standard articulated by Hall and adopted by the Sixth Circuit in Webb, to determine whether a constitutional violation has occurred a court must consider (1) whether the application of force caused severe injury, (2) whether the force applied was disproportionate to the need presented, and (3) whether the force applied was inspired by malice or sadism, rather than a merely careless or unwise excess of zeal, that amounted to a brutal and inhumane abuse of official power, shocking to the conscience.

22

Mr. Nugent contends that the plaintiffs cannot establish these three elements.

The parties dispute as to whether the conduct by Mr. Nugent should be characterized as corporal punishment. The plaintiffs contend that Mr. Nugent's conduct was a vicious reaction born out of malice toward a disabled child and that the defendant's reliance on corporal punishment cases is inaccurate and misplaced. Although the defendant characterizes this case as involving corporal punishment and many of the cases relied upon by the defendant involve excessive corporal punishment claims, the instant case is better characterized simply as a claim involving excessive force in the public school context. Regardless of the characterization, the claim is still analyzed the same using the test articulated in Hall and Webb. See Lillard, 76 F.3d at 724-726; Webb, 828 F.2d at 1158-59; Gottlieb, 272 F.3d at 174 ("Informal physical confrontations have also been considered corporal punishment.") (collecting cases); Jones v. Witinski, 931 F. Supp. 364, 367 (M.D. Pa. 1996) ("Our interpretation of his claim is that [the defendant] used excessive force in attempting to remove him physically from his chair and propel him toward the door . . . . The allegations are, however, closely enough allied with claims of corporal punishment that cases involving the latter apply analogous principles and provide useful guidelines[.]"); Gonzales v. Passino, 222 F. Supp.2d 1277, 1281 (D. N.M. 2002) (where teacher hit student with plastic

23

bat because he was angry at either being called a name or being ignored, the district court stated, "The only difference between this case and one in which a student is paddled . . . is that the application of force in this case was spontaneous and immediate, rather than postponed. . . . [T]he fact that punishment occurs instantaneously rather than after a period of time does not mean it is not punishment."). What is relevant is not the characterization of the alleged conduct but whether that conduct shocks the conscience.

The Court recognizes that "when the analysis focuses, as it does in the present case, on the level of force applied, the amount of harm inflicted, and the justifications for the application of force, some degree of line drawing is required." Darden, 1988 WL 40083, at *5. Although "comparing the facts of this case to other cases is of limited value in resolving the constitutional issue presented, some comparison is necessary to give fuller meaning to the legal standards for 'brutal and inhumane' conduct which is 'shocking to the conscience,' as that standard has previously been applied in this circuit." Archey, 1991 WL 100586, at *3. Therefore, the Court shall review decisions rendered using the Hall analysis as guidance in applying the "shocks the conscience" standard to the facts in the instant case.

24

In Lillard v. Shelby County Bd. of Educ., a high school physical science teacher and soccer coach verbally abused a fourteen year old student, held her chin with one hand and admittedly slapped her across the face "harder than he meant." 76 F.3d at 719. He also made unspecified threats after slapping her. Id. Affirming the defendant's motion for summary judgment, the Sixth Circuit stated:

> On the one hand, as in Webb, the record fails to reflect any legitimate disciplinary purpose occasioning the slap to [the plaintiff]. On the other hand, it is simply inconceivable that a single slap could shock the conscience. We do not quarrel with a suggestion that Leventhal's actions were careless and unwise; but they fall far short of "brutal," or "inhumane," or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process. In contrast to Webb, the blow inflicted here was neither severe in force nor administered repeatedly. Moreover, the slap did not result in any physical injury to [the plaintiff]. While we do not mean to suggest that school systems should tolerate a teacher who slaps a student in anger, neither do we conclude that one slap, even if made for no legitimate purpose, rises to the level of a constitutional violation. While [the defendant] should reasonably expect to face serious consequences for his treatment of [the plaintiff], those consequences should not be found in a federal court through the mechanism of a section 1983 action.

Id. at 725-26 (citation omitted).

In Saylor v. Board of Educ. of Harlan County, a fourteen year old student was paddled five times after getting into a fight with another student. 118 F.3d at 508. The paddling left the boy with bruised buttocks. He was taken to the emergency room but was not

25

treated. The defendants acknowledged that the force used in administering the paddling was excessive. Id. at 511. However, the Sixth Circuit found that:

> as a matter of law, the bruises caused by the five licks of the paddle on [the plaintiff's] fully clothed buttocks were not "so sever . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that [the paddling] amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

Id. at 515.[7] See also Archey, 1991 WL 100586 (no substantive due process violation where fifth grader was struck five times with a wooden paddle, resulting in severe bruising of the buttocks and an impaired gait, for humming in the bathroom); Darden, 1988 WL 40083 (no substantive due process violation where fourth grader was paddled two or three times for not having his homework and

---

[7]Although the Court found that the spanking itself did not constitute a due process violation, it found arguable that the presumed violation of the school system's code of conduct, which provided that parents could notify school personnel as to their objection of the use of corporal punishment on their children, constituted a due process violation. Id. at 515. Assuming that the child's father did not authorize the use of corporal punishment, the Court found that the violation of the school's code of conduct was not so clearly established as a constitutional right that a reasonable teacher would realize that such a violation would violate the United States Constitution. Id. The Sixth Circuit stated, "We are aware of no pre-existing law 'dictat[ing]' the conclusion that a disciplinary paddling administered by a school teacher in violation of school regulations would *ipso facto* violate federal constitutional law." Id. at 516 (citing Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243, 1245-46 (5ᵗʰ Cir. 1984) where the United States Court of Appeals for the Fifth Circuit found that the plaintiff's paddling in contravention of the school's parental consent regulation did not violate her substantive due process rights).

26

emergency room physician found a three to four inch bruise on his left buttock); Brown by Brown v. Johnson, 710 F. Supp. 183, 186 (E.D. Ky. 1989) (where nine year old student was spanked seven times within thirty minutes, district court found that although she was severely bruised, neither the punishment nor the injuries sustained shocked the conscience).

Likewise, in Golden v. Anders, 324 F.3d 650 (8th Cir. 2003), the United States Court of Appeals for the Eighth Circuit found no substantive due process violation where the principal forcefully restrained a sixth grade student who was violently kicking a school vending machine. Id. at 651. The plaintiff had refused to obey another teacher's order to stop before the principal's arrival. When the principal arrived, he threw the plaintiff on a bench and held him down by his neck and collar. The plaintiff struggled to breathe and felt a pain in his neck. According to one student, the principal appeared angry and "not businesslike" in his demeanor. Id. at 652. The principal told the plaintiff that he "was close to knockin' [his] head off." Id. The plaintiff was subsequently taken to the emergency room by his mother where he received a steroid shot to relieve his swollen neck. The plaintiff also suffered from a pulled nerve in his shoulder and had to wear a neck brace for two weeks. The Court found that the plaintiff's injury fell "well short of those sustained by students whose substantive due-process claims have withstood summary judgment." Id. at 655;

27

see also London v. Directors of the DeWitt Pub. Schs., 194 F.3d 873 (8ᵗʰ Cir. 1999) (defendant's use of force was not excessive where he dragged a student along a cafeteria floor for fifteen feet before slamming the student's head against a metal pole after the student would not obey the defendant's order to leave and because the student fought back).

Moreover, in Gonzales v. Passino, a teacher struck a middle school student on the arm with a plastic bat when the teacher believed that the student called him a derogatory name. 222 F. Supp.2d at 1279. The next day the plaintiff went to a clinic to have his arm examined. A medical professional found tenderness and faint swelling. Ruling in favor of the defendant, the court found, "One hit with a plastic bat on the arm, even a hard smack, simply does not have the potential to cause serious harm to an eighth-grade student, and did not cause such harm in this case." Id. at 1282.

Also, in Jones v. Witinski, the plaintiff student was being disruptive in the classroom. 931 F. Supp. 365. His seventh grade teacher told him to leave and then grabbed his arm, pulling him over the student's desk. The student allegedly suffered bruises and psychological trauma. Id. at 368. Nevertheless, the court found that "[p]ulling a student by the arm is not 'a brutal and inhumane abuse of official power literally shocking to the conscience.'" Id. at 371; see also Brooks v. School Bd. of

28

Richmond, 569 F. Supp. 1534, 1535 (E.D. Va. 1983) (pricking a student in the arm with a straight pin did not rise to the level of a constitutional violation); Kurilla v. Callahan, 68 F. Supp.2d 556, 564 (M.D. Pa. 1999) (where teacher punched a student in the chest while breaking up a fight, resulting in a bruise on the student's chest and causing him to suffer from anxiety, the court found that the injuries were not "severe" under Hall. Although the student sought medical care, there was no showing that medical attention was reasonably necessary.).

Finally, in Brown ex rel. Brown v. Ramsey, 121 F. Supp.2d 911 (E.D. Va. 2000), a first grade student suffering from Asperger's Syndrome, a neurological disorder in the family of autism, filed a civil rights action against two of his special education teachers. The plaintiff alleged that his teachers placed him in a suffocating "basket hold" on approximately forty occasions. Id. at 912-13. The plaintiff was diagnosed with post-traumatic stress disorder, and the psychotherapist noted that the plaintiff had suffered nightmares during the alleged abusive period but that they had since stopped. Id. at 915. In finding that the plaintiff had not established a substantive due process violation, the court stated:

> [The plaintiff's] only injury appears to be that he experienced some pain and suffering at the time of the alleged abuse (for which he never sought medical attention) and that he either currently suffers or has suffered from Post-Traumatic Stress Disorder. The alleged incidents of abuse never manifested any physical injury in [the plaintiff], and he was never taken to or treated by a medical doctor in connection with these

29

alleged incidents. The lack of any physical injury in
this case contrasts sharply with the severe physical
injuries sustained in school excessive force cases where
summary judgment was denied.

Id. at 923.

### 2. decisions denying summary judgment

As discussed earlier, both Courts in Webb and Hall denied the

defendants' motions for summary judgment finding that the

plaintiffs had met their burden in establishing a substantive due

process claim. Likewise, in Garcia by Garcia v. Miera, 817 F.2d

650, 658 (10th Cir. 1987), the United States Court of Appeals for

the Tenth Circuit found summary judgment inappropriate where a nine

year old suffered deep bruises, bleeding and a permanent scar from

being paddled. The Court concluded:

[T]his nine-year-old girl was held up by her ankles and
hit several times with a split board of substantial size
on the front of her legs until they bled--supported by
evidence of a permanent scar--are sufficient. The
allegations with respect to the second beating, that the
punishment was severe enough to cause pain for three
weeks--supported by pictures of the injured buttocks, an
affidavit from an examining doctor that in his long
experience he had not seen bruises like that from routine
spankings, and an affidavit from an examining nurse that
if a child had received this type of injury at home she
would have reported it as child abuse--are also
sufficient. These claims may not survive the crucible of
the trial, but they overcome defendants' motion for
summary judgment.

Id.; see also Neal v. Fulton County Bd. of Educ., 229 F.3d 1069,

1076 (11th Cir. 2000) (finding substantive due process violation

where student was blinded in one eye when a coach intentionally hit

him in the head with a metal weight).

30

In Metzger by Metzger v. Osbeck, 841 F.2d 518 (3d Cir. 1988), a teacher overheard the plaintiff in his swim class using inappropriate language while conversing with a female student about baseball cards. Id. at 519. The teacher walked behind the plaintiff and placed his arms around the plaintiff's neck and shoulders. While holding the plaintiff in this position, he began questioning the student about his use of offensive language. The teacher shifted his hold on the plaintiff placing his arm under the plaintiff's chin, forcing him to stand on his toes to avoid being choked. When the teacher released his hold, the plaintiff fell face down on the pool deck. As a result of the fall, the plaintiff suffered lacerations to his lower lip, a broken nose, fractured teeth and other injuries requiring hospitalization. Id. at 519-20. Finding that a substantive due process claim existed, the United States Court of Appeals for the Third Circuit reversed the district court's grant of summary judgment. Id. at 521.

In P.B. v. Koch, 96 F.3d 1298, 1299 (9th Cir. 1996), the United States Court of Appeals for the Ninth Circuit affirmed the district court's denial of the defendant's motion for summary judgment. Three students filed claims of excessive force arising out of three separate incidents against the defendant high school principal. Id. The defendant was alleged to have: (1) slapped and grabbed the neck of one plaintiff; (2) grabbed the neck and punched in the chest the second plaintiff; and (3) grabbed by the neck and thrown

31

the last plaintiff head first into some lockers. Although the plaintiffs did not require any extensive medical treatment or hospital stays, the Court found that the "deliberate and intentional harm allegedly inflicted--causing pain, bruising, and emotional injury--[was] significant." Id. at 1304. The Court concluded:

> Whether we describe the "right" as the right to bodily integrity, the right to be free from "unjustified intrusions on personal security," the right to be free from excessive force, or the right to be free from arbitrary and excessive corporal punishment, it is clear that a principal, who physically assaulted his students in the manner [the defendant] allegedly did, has violated their clearly established constitutional rights.

Id. (citation omitted).

Finally, in Dockery v. Barnett, 167 F. Supp.2d 597, 600 (S.D.N.Y. 2001), the plaintiffs, two autistic boys ages seven and five years old, were students in a self-contained class for autistic children. The teacher allegedly force-fed one of the boys, and on four occasions she forcefully grabbed him, causing either bruises and/or cuts from her fingernails on his hands, wrists and arms. The teacher also allegedly was too physical with the other boy where she left a red hand print on the boy's shoulder on one occasion and scratches on his body on another. Id. at 601. In finding that the plaintiffs had shown a severe injury, the district court stated:

> In the case at bar, [the teacher] allegedly force-fed Johnson against his will, and may have repeatedly grabbed the children with enough force to leave a hand print, a

32

fingernail mark, a bruise, or to cause tears. Along with the scratches and bruises, the children have faced severe psychological injuries. Johnson allegedly suffered from an increase in violent and self-injurious conduct, as well as the onset of such behavior as compulsive masturbation, which required him to be placed on an anti-psychotic medication. Dockery allegedly became uncharacteristically violent, kicking, head butting and spitting with increased frequency and intensity. On their face, their injuries do not seem particularly serious, but the issue is better reserved for a jury--especially considering that the alleged abuses continued over the course of an entire school year, and plaintiffs in this case are autistic children, who are more vulnerable and less capable of communicating than other children.

Id. at 603-04.

### 3. conclusion

After examining cases from this circuit and others, the Court finds that those cases in which a substantive due process claim was found to exist involved situations where a plaintiff experienced an injury much more severe than that alleged in the instance case. Applying the "shocks the conscience standard" that has developed under Hall and its progeny, the Court finds that the plaintiffs have not established a substantive due process claim against Mr. Nugent as they have not established that Cory experienced severe injury in the constitutional sense. This conclusion is not only consistent with decisions reached by courts in this circuit but by other courts as well.

The plaintiffs in Hall, Garcia, and Metzger clearly suffered injuries more severe than those alleged in the instant case. Even in Dockery, the autistic children suffered what the court

33

characterized as "severe psychological injuries" where one child was required to be placed on anti-psychotic drugs and the other became "uncharacteristically violent." Further, the court noted that the alleged abuses took place over the course of a year. Here Cory did not receive any medical treatment for his bruises or suffered any physical impairments, temporary or otherwise, from being kicked and knocked to the ground.

Ms. Fessler also alleges without any elaboration that Cory's behavior difficulties increased at school and at home. However, the record does not totally support the plaintiffs' contention that Mr. Nugent's conduct was the cause of this alleged occurrence. From November 1999 to February 2000, Cory's "behaviors" improved, but in March 2000 they began to worsen. Ms. Archer, Ms. Olive and Ms. Holley all testified that Cory had excessive absences, especially at the end of February and during March 2000, and that such disruptions in his routine would tend to exacerbate his "behaviors." Ms. Olive and Ms. Holley also believed that the change to Cory's diet in March 2000 had an impact on his "behaviors" as well. See deposition (Docket Entry No. 92) of Dawn Archer at 47, 61-63, 74-75; deposition (Docket Entry No. 77) of Rose Brown, attachment thereto, exhibit 1, February 18, 2000, memorandum; notice (Docket Entry No. 63) of filing, attachment thereto, deposition of Freda Olive at 17, 19-21; notice (Docket Entry No. 67) of filing, attachment thereto, deposition of Tonya

34

Holley at 43-46, 96-97. Ms. Fessler also admitted that a change in his doctors and changes at school during this time frame contributed to his "behaviors." Defendants' notice (Docket Entry No. 36) of filing, attachment thereto, deposition of Janet Fessler at 54-57.

While there is a dispute of fact as to what caused an increase in Cory's "behaviors" and the Court views all facts and inferences in the light most favorable to the plaintiffs, the Court does not find that an increase in Cory's "behaviors" constitutes a severe injury as contemplated under the <u>Hall</u> analysis. As illustrated above, Cory already had "behaviors" at home and school virtually on a daily basis before Mr. Nugent arrived. <u>Id</u>. at 154-55. The record does not reveal the nature of these increased behavioral difficulties nor does it show them to be on the level of the child's in <u>Dockery</u> where he became "uncharacteristically violent." Cory had "behaviors" on a daily basis, which varied due to a variety of causes. There is nothing to show that the nature of these behavioral difficulties was any different than usual, and his having "behaviors" certainly cannot be deemed as being "uncharacteristic."

To be sure, the Ninth Circuit reached a different conclusion in <u>P.B. v. Koch</u>. However, in light of all the cases previously cited, that opinion appears to be somewhat of an anomaly. The clear weight of authority is contrary to a finding of a substantive

35

due process violation based on the facts in this case. While Mr. Nugent's conduct may have been possibly tortious, the plaintiffs have failed to establish a constitutional cause of action. Accordingly, the Court finds that the plaintiffs' substantive due process claim against Mr. Nugent is without merit.[8]

Because the Court has determined that Mr. Nugent's conduct did not constitute a constitutional violation, the plaintiffs' claims against Mr. Collins and the Giles County Board of Education for failure to train and supervise are likewise without merit. However, assuming *arguendo* that the plaintiffs were able to establish a constitutional violation against Mr. Nugent, the Court will address the plaintiffs' claims of failure to train and supervise against Mr. Collins and the Giles County Board of Education.

## B. GILES COUNTY BOARD OF EDUCATION

The plaintiffs allege that the Giles County Board of Education failed to train properly and supervise Mr. Nugent and other employees of the school system, creating a policy that abusive conduct by the school system's employees towards its students would be tolerated. In order to state a civil rights claim against a local governmental entity, a plaintiff must establish that (1) he suffered a deprivation of a constitutionally protected interest;

_____

[8]Because the Court's conclusion is based on the fact that Cory did not suffer a severe injury, it does not need to determine the other two factors.

and (2) the deprivation was caused by an official policy, custom[9] or usage of the local governmental entity. <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611, 635 (1978). A plaintiff cannot rely on the actions of individual employees in order to impose liability on municipalities, because *respondeat superior* liability is not contemplated by § 1983. <u>Id</u>. As stated by the Supreme Court, "municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452, 465 (1986).

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than

---

[9]     For purposes of § 1983, a "custom" is a legal institution that is permanent and established, but is not authorized by written law. Before a custom can be the basis for a civil rights violation, the custom must be so "permanent and well settled as to constitute a 'custom or usage' with the force of law."

<u>Feliciano v. City of Cleveland</u>, 988 F.2d 649, 655 (6th Cir. 1993) (quoting <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 635-36).

37

> the single incident will be necessary in every case to
> establish both the requisite fault on the part of the
> municipality, and the causal connection between the
> "policy" and the constitutional deprivation.

City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct.
2427, 2436-37, 85 L.Ed.2d 791, 804 (1985) (footnotes omitted).

Inadequacy of training or supervision may serve as the basis
for liability under § 1983 only where the failure to
train/supervise amounts to deliberate indifference to the rights of
persons who come into contact with the employees of the
governmental entity. City of Canton, Ohio v. Harris, 489 U.S. 378,
388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412, 426 (1989). To be
sure, for the governmental entity to be liable under § 1983 its
policies must be the moving force behind the constitutional
violation. Id., 489 U.S. at 388-89, 109 S.Ct. at 1204-05, 103
L.Ed.2d at 426-27. Thus, "[o]nly where a municipality's failure to
train its employees in a relevant respect evidences a 'deliberate
indifference' to the rights of its inhabitants can such a
shortcoming be properly thought of as a [governmental] 'policy or
custom' that is actionable under § 1983." Id., 489 U.S. at 389,
109 S.Ct. at 1205, 103 L.Ed.2d at 427. "Deliberate indifference is
a stringent standard of fault, requiring proof that a municipal
actor disregarded a known or obvious consequence of his action."
Board of County Comm'rs v. Brown, 520 U.S. 397, 410, 117 S.Ct.
1382, 1391, 137 L.Ed.2d 626, 643 (1997).

38

Two types of situations where a court may find deliberate indifference in the failure to train/supervise context is where the governmental entity fails to respond to repeated incidents of constitutional violations by its employees and where it fails to provide adequate training/supervision in light of foreseeable serious consequences that could result from a lack of training and supervision. Harris, 489 U.S. at 390 n.10, 109 S.Ct. at 1205 n.10, 103 L.Ed.2d at 427 n.10. Thus, as the Supreme Court has stated, "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality--a 'policy' as defined by our prior cases--can a city be liable for such a failure under § 1983." Id., 489 U.S. at 389, 109 S.Ct. at 1205, 103 L.Ed.2d at 427. Accordingly, in order to prove a claim against a governmental entity for failure to train and supervise, the plaintiffs must prove (1) that the training program and/or supervision was inadequate to the task the employee must perform; (2) that the inadequacy was the result of deliberate indifference; and (3) that the inadequacy was "closely related to" or "actually caused" the plaintiff's injury. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Harris, 489 U.S. at 390-91, 109 S.Ct. at 1205-06, 103 L.Ed.2d at 427-28). "Allegations that a particular [employee] was improperly trained [and/or supervised] are insufficient to prove liability, as are claims that a particular injury could have been

39

avoided with better training." <u>Sova v. City of Mt. Pleasant</u>, 142
F.3d 898, 904 (6th Cir. 1998).

The Court finds that the plaintiffs have failed to establish
any causal connection between the defendant's training and
supervision and the alleged injury. The plaintiffs have not
presented any evidence of repeated incidents where the conduct of
Mr. Nugent or any other teacher rose to the level of a
constitutional violation. The plaintiffs admit that the defendant
had a policy of insuring a safe environment for students, although
they dispute that this was done in practice. Plaintiffs'
memorandum (Docket Entry No. 79) at 5. However, one isolated
incident cannot establish municipal liability where the plaintiffs
have failed to establish the existence of an unconstitutional
policy. There is nothing in the record to indicate that inadequate
training and/or supervision actually caused Cory's injury.

The record reveals that Mr. Nugent had a Bachelor of Science
in Education and Social Sciences, he had taken an introduction
course in the exceptional child and in January 2000 he had begun
taking classes in a master's program in special education. Notice
(Docket Entry No. 63) of filing, attachment thereto, deposition of
Dan Nugent at 7, 19, 21-24. In either January or February 2000,
Mr. Nugent, Ms. Olive and Ms. Holley visited a school in Franklin,
Tennessee, to observe a classroom with autistic children. <u>Id</u>. at
20; deposition of Freda Olive at 102. Mr. Nugent also testified

40

that some of the physical means of redirecting Cory that he employed, such as placing his thumb on Cory's top lip to get him to release his bite or applying pressure points between Cory's thumb and forefinger to counteract his pinching, to which Ms. Holley objected, he learned in his severe disabilities class. Id. at 65-66, 84-85. Ms. Olive was certified in special education in 1975, completed her master's work in 1978, and had been to numerous training workshops regarding teaching and behavior management techniques. Id., deposition of Freda Olive at 27-32. Additionally, behavioral specialists visited the school monthly to give recommendations with dealing with autistic children. Ms. Archer found these instructions helpful. Deposition (Docket Entry No. 92) of Dawn Archer at 69-73.

Although Ms. Fessler desired for the teachers and aides to receive more training, the plaintiffs have failed to show that any inadequacy in training or supervision directly caused Cory's injury. While Ms. Archer testified that more training "would not hurt" and that more hands-on training in dealing with behavior management techniques was needed, she believed that she was effective as a teacher. Id. at 32-34, 57. Ms. Holley, who believed more training was needed, admitted that she did not know what the specifics were of being properly trained. Notice (Docket Entry No. 67) of filing, attachment thereto, deposition of Tonya Holley at 166. Further, the plaintiffs have not presented any

41

evidence as to what types of behavior management techniques are proper and improper. Although Ms. Holley and Ms. Archer believed in using positive reinforcement techniques and disapproved of using aversive[10] techniques, there is no evidence establishing that the use of aversive techniques is improper. Deposition (Docket Entry No. 92) of Dawn Archer at 21. Ms. Olive testified that no expert has ever told her not to use physical means in disciplining an autistic child. Notice (Docket Entry No. 67) of filing, attachment thereto, deposition of Freda Olive at 38. Moreover, even if Mr. Nugent's employment of aversive techniques was improper and a result of his inadequate training and/or supervision, such action would not be sufficient to impose liability on the Giles County Board of Education. One employee being improperly trained and/or supervised is not enough to establish liability. Sova, 142 F.3d at 904.

Accordingly, the Court finds that the plaintiffs' claims against the Giles County Board of Education are without merit.

### C. SAM COLLINS

The plaintiffs also allege that Mr. Collins failed to train properly and supervise Mr. Nugent and other employees of the school system, creating a policy that abusive conduct by the school system's employees towards its students would be tolerated.

___

[10]Again, the word "aversive" appears to be a term of art with regard to the treatment of autistic children.

Deliberate indifference is also the applicable standard used in the plaintiffs' failure to train claim against Mr. Collins. However, because Mr. Collins is sued in his individual capacity, the test applied for "deliberate indifference" is a subjective one. <u>Farmer v. Brennan</u>, 511 U.S. 825, 842, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811, 828 (1994). Therefore, the plaintiffs must show that Mr. Collins acted or failed to act despite his knowledge of a substantial risk of serious harm. As stated previously, there is no evidence that Mr. Nugent was inadequately trained or that any inadequacy directly caused Cory's injury. Accordingly, the plaintiffs' failure to train claim as to Mr. Collins is without merit.

In asserting a § 1983 action against a supervisory official, a plaintiff must show that the defendant was either directly or personally involved in the alleged unconstitutional activity. <u>Dunn v. State of Tennessee</u>, 697 F.2d 121, 128 (6th Cir. 1982). "What is required is a causal connection between the misconduct complained of and the official sued." <u>Id</u>. Liability under § 1983 must be based on more than *respondeat superior* or the right to control employees. <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999).

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

43

<u>Id</u>. (quoting <u>Hays v. Jefferson County</u>, 668 F.2d 869, 874 (6th Cir.

1982)); <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984).

"Thus, liability under § 1983 must be based on active

unconstitutional behavior and cannot be based upon 'a mere failure

to act.'" <u>Id</u>. (quoting <u>Salehpour v. University of Tennessee</u>, 159

F.3d 199, 206 (6th Cir. 1998), <u>cert</u>. <u>denied</u>, 526 U.S. 115, 119 S.Ct.

1763, 143 L.Ed.2d 793 (1999)).

The Court finds that the plaintiffs have failed to prove that

Mr. Collins was either directly or personally involved in the

alleged unconstitutional activity by Mr. Nugent. There is no

evidence that Mr. Collins was made aware of any problem between

Cory and Mr. Nugent. Plaintiffs' response (Docket Entry No. 81) to

statements of material facts, ¶¶ 2-3. Further, even if the Court

were to assume that Mr. Collins had become aware of a problem

between the two, that alone is not enough to impose liability on

Mr. Collins because plaintiffs cannot rely on *respondeat superior*

as a basis for liability.

In <u>Lillard</u>, three high school girls alleged, among other

things, violations of their substantive due process rights against

Gary Leventhal, the girls' physical science teacher and soccer

coach, the school board, the superintendent and the principal. 76

F.3d 716. One of the plaintiffs, Andrea Lillard, alleged that Mr.

Leventhal was verbally abusive to her and had slapped her across

the face. <u>Id</u>. at 719. Andrea's father contacted the school

44

principal regarding this incident on three occasions. He then contacted the superintendent and wrote two letters to the school board complaining about the alleged "sexual harassment." Also, an FBI agent who was a follower of the school's athletic program contacted the principal after learning of the slapping incident. He stated that he had observed Mr. Leventhal cursing and verbally abusing the girls and hitting them on their buttocks. He also contacted the superintendent. Id.

A second plaintiff, Julie McCarter, alleged that Mr. Leventhal placed his hands between her breasts and fondled her buttocks on unspecified dates. Id. at 720. Previously, her father had complained to the principal about Leventhal's sexual language and his verbal abuse. He also complained to the principal, the superintendent and a school board official that Mr. Leventhal would not keep his hands to himself when dealing with the girls. The defendants denied that they had been informed about Mr. Leventhal sexually harassing McCarter. Id.

The last plaintiff, Lori Briana Little, alleged that Mr. Leventhal abused and humiliated her in a variety of ways, including staring at her, making "kissing" noises, and generally insulting her. He also called her at home to question her about her relationships with other students. Briana's parents informed the principal of this treatment and requested that he transfer their daughter out of Mr. Leventhal's class. Id. On the last day of

45

school, Mr. Leventhal allegedly rubbed Briana on her stomach as he passed her in the hallway. Id. at 721. The defendants denied that they ever received any complaints regarding Mr. Leventhal's conduct towards Briana. Id.

Addressing the plaintiffs' substantive due process claims against the defendants, the Sixth Circuit stated:

> Viewing the facts in the light most favorable to the plaintiffs, the court must assume that these defendants had all been alerted, in some fashion, to some misconduct on the part of Leventhal. . . . [S]imply having some incidents of harassment brought to the attention of supervisory defendants is not sufficient to make them liable under section 1983. And here, there is, indisputably, no evidence that any of the supervisory defendants either encouraged Leventhal's behavior, or directly participated in it.

Id. at 728 (citing Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984) where despite several witnesses testifying that supervisory officials were notified about harassment by prison guards and no action taken, the Court concluded that the plaintiff did not make any showing that any of the defendant supervisory officials actively participated in or authorized any harassment of the plaintiff).

Accordingly, the plaintiffs' claim against Mr. Collins for failure to supervise is without merit.

V.

For the reasons stated above, the motion (Docket Entry No. 58) for summary judgment by the defendants, Giles County Board of

46

Education and Sam T. Collins, and the motion (Docket Entry No. 64) by the defendant, Dan Nugent, for summary judgment are granted.

An appropriate order shall be entered.

Thomas A. Higgins
United States District Judge
7-27-05